NOTICE
Decision filed 12/26/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230895-U

NO. 5-23-0895

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 23-CM-37 |
| | ) | |
| JEREMY G. WILLARD, | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the circuit court's order imposing conditions of release, including electronic monitoring, where the overall determination regarding conditions of pretrial release was not an abuse of discretion, but find that the circuit court erred in determining that the defendant's failure to participate in a nonmandatory risk assessment could be a factor in its determination regarding electronic monitoring.

¶ 2     The defendant, Jeremy G. Willard, appeals the October 6, 2023, order of the circuit court of Christian County that set conditions for the defendant's pretrial release pursuant to the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act (Act),[1] as codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). See Pub. Acts

_____

     [1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

1

101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of act as September 18, 2023). On appeal, the defendant only challenges the pretrial release condition of electronic monitoring. For the following reasons, we affirm the order of the circuit court of Christian County.[2]

¶ 3                                        I. BACKGROUND

¶ 4     The defendant was charged by information with committing the offense of unlawful violation of an order of protection (OP) in violation of section 12-3.4 of Criminal Code of 2012 (720 ILCS 5/12-3.4 (West 2022)). The charge alleged that, after having been served with the contents of an OP in case number 2023-OP-208, issued by the circuit court of Christian County, the defendant did intentionally text a protected party on October 5, 2023, an act which was prohibited by the OP.

¶ 5     The circuit court held a hearing regarding pretrial release on October 6, 2023. During the hearing, the State proffered that law enforcement was called by the defendant's former girlfriend, who indicated that the defendant had violated an OP. Law enforcement officers were shown six text messages that occurred on October 5, 2023, from a cellular telephone number tied directly to the defendant. The text messages stated various profanities, including "you can shove this OP right up your stinky—stinky, nasty a***, mother f*** p***, b***." The State then argued for, *inter alia*, electronic monitoring as a condition of pretrial release. The defendant's counsel objected to, and argued against, electronic monitoring.

---

[2]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before December 18, 2023, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

2

¶ 6    After hearing arguments, the circuit court found as follows:

"The Court's going to also find that no less restrictive conditions of release or combination of less restrictive conditions of release would reasonably ensure the appearance for later hearings or protect identifiable person being [the defendant's former girlfriend] from an imminent threat of serious physical harm and I will order electronic monitoring.

The basis for that finding is, one, the Defendant did not cooperate with pretrial services and was not scored under the ODARA, O-D-A-R-A, so the Court doesn't have an objective measure of his possible risks to recidivate.

Also, the Court's reviewed the allegations in the petition for order of protection in case 23-OP-208 and I'll take judicial notice of that petition in which —and I understand these are allegations, but the Court in that case, not me, but a different Judge entered the emergency order of protection in which the alleged victim, [the defendant's former girlfriend], alleged that the Defendant threatened physical harm to her, to himself and to anyone that she might date and he also made —allegedly made repeated contact with her by phone, came to her home uninvited. So, for those reasons, I will order the electronic monitoring."[3]

¶ 7    The same day, October 6, 2023, the circuit court entered a conditions of pretrial release order stating that the defendant was charged with a detention-eligible offense, but that the State had not filed a petition to detain. Therefore, the circuit court ordered the defendant released with

[3]Ontario Domestic Assault Risk Assessment (ODARA) is an actuarial tool used to estimate the risk that a domestic violence offender will assault a partner again. www.odara.waypointcentre.ca (last visited Dec. 6, 2023).

3

the statutorily mandated conditions set forth in section 110-10(a) of the Code. 725 ILCS 5/110-10(a) (West 2022). The circuit court further found that, having reviewed all relevant factors and standards set forth in sections 110-2, 110-5, and 110-10(b) (*id.* §§ 110-2, 110-5, 110-10(b)), additional conditions of release were necessary to ensure the defendant's appearance in court; ensure the defendant did not commit any criminal offense; ensure the defendant's compliance with conditions of release; prevent the defendant's unlawful interference with the orderly administration of justice; and ensure the defendant's compliance with the rules and procedures of problem-solving courts. The circuit court then imposed additional conditions of release, including electronic monitoring without home detention. The circuit court's pretrial release order reflected the circuit court's oral findings with regard to the electronic monitoring, stating that the basis for the circuit court's finding was as follows:

> "The Defendant failed to cooperate with the pretrial investigation and was not scored under ODARA for his risk to recidivate. According to the allegations in the petition for order of protection in case 23-OP-208, Defendant allegedly threatened harm to the alleged victim, to himself, and to anyone she might date. He also allegedly repeatedly contacted her by phone and came to her home uninvited."

The circuit court further found that the imposed conditions of release were the least restrictive conditions and were individualized to the defendant. The defendant filed a timely notice of appeal upon completion of the hearing.

¶ 8                                      II. ANALYSIS

¶ 9        On appeal, the defendant only challenges the pretrial release condition of electronic monitoring. The defendant argues that electronic monitoring was not the least restrictive condition of release since the defendant had no violent or meaningful criminal history, the case involved no

bodily harm or any physical contact, and the alleged violation centered on angry text messages. The defendant further argues that the circuit court erred in taking into consideration the defendant's refusal to participate in a risk assessment interview, and in taking judicial notice of matters not of record, namely, the allegations in the OP proceedings.

¶ 10     Pretrial release, including any conditions related thereto, is governed by the Act as codified in article 110 of the Code (725 ILCS 5/art. 110 (West 2022)). A defendant's pretrial release may be denied only in certain statutorily limited situations. *Id.* § 110-6.1. If pretrial release is granted, the Code mandates that the circuit court impose certain conditions that are mandatory, and allows other permissive conditions to be imposed. *Id.* §§ 110-5(c), 110-10(a) (mandatory conditions); 110-10(b) (nonexclusive list of permissive conditions). The conditions of release imposed, however, shall be the least restrictive conditions or combination of conditions necessary to reasonably ensure the appearance of the defendant as required, or the safety of any other person or persons or the community. *Id.* § 110-5(c).

¶ 11     To set appropriate conditions of pretrial release, the circuit court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* §§ 110-2(b), 110-5(a). In reaching its determination, the circuit court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person, except that the court may consider the admissibility of any evidence sought to be excluded; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* § 110-5(a).

5

¶ 12    In this matter, the OP had been obtained by the defendant's former girlfriend. When a person is charged with a violation of a protective order committed against a spouse, or a current or former partner in cohabitation or dating relationship, the circuit court may also consider the following additional factors:

   "(A) whether the alleged incident involved harassment or abuse, as defined in the Illinois Domestic Violence Act of 1986;

   (B) whether the person has a history of domestic violence, as defined in the Illinois Domestic Violence Act of 1986, or a history of other criminal acts;

   (C) the mental health of the person;

   (D) whether the person has a history of violating the orders of any court or governmental entity;

   (E) whether the person has been, or is, potentially a threat to any other person;

   (F) whether the person has access to deadly weapons or a history of using deadly weapons;

   (G) whether the person has a history of abusing alcohol or any controlled substance;

   (H) the severity of the alleged incident that is the basis of the alleged offense, including, but not limited to, the duration of the current incident, and whether the alleged incident involved the use of a weapon, physical injury, sexual assault, strangulation, abuse during the alleged victim's pregnancy, abuse of pets, or forcible entry to gain access to the alleged victim;

6

(I) whether a separation of the person from the victim of abuse or a termination of the relationship between the person and the victim of abuse has recently occurred or is pending;

(J) whether the person has exhibited obsessive or controlling behaviors toward the victim of abuse, including, but not limited to, stalking, surveillance, or isolation of the victim of abuse or the victim's family member or members;

(K) whether the person has expressed suicidal or homicidal ideations; and

(L) any other factors deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of that behavior." *Id*. § 110-5(a)(6)(A)-(L).

¶ 13 The statute lists no singular factor as dispositive. *Id*. § 110-5(a), (a)(6)(A)-(L). When a person is charged with a violation of a protection order, the circuit court may order the defendant placed under electronic surveillance as a condition of pretrial release and the circuit court is required to set forth in the record the basis for its findings. *Id*. § 110-5(d), (g). The burden is on the State "to prove by clear and convincing evidence that any condition of release is necessary." *Id*. § 110-2(b). A circuit court's determination of pretrial release conditions will not be reversed unless the determination constitutes an abuse of discretion. See *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11. Questions regarding whether the circuit court properly considered one or more of the statutory factors in determining conditions of release are also reviewed for an abuse of discretion. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 11. An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the circuit court. *Id*.

7

¶ 14    The circuit court's finding that the State presented clear and convincing evidence showing that mandatory conditions of release would fail to protect any person or the community will not be reversed unless those findings are against the manifest weight of the evidence. *Id.* ¶ 12. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.* "Under the manifest weight standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 15    The defendant first argues that the circuit court improperly considered the defendant's refusal to participate in a risk assessment interview. The defendant argues that his silence proved "nothing," and his decision not to be interviewed did not demonstrate that he endangered the complaining witness or that electronic monitoring was necessary. As such, the defendant argues that his refusal to participate in a risk assessment interview was not a proper basis for the circuit court's determination that electronic monitoring was the least restrictive condition for pretrial release.

¶ 16    Section 110-5(b) of the Code provides that the circuit court may use a regularly validated risk assessment tool to aid in its determination of appropriate conditions of release, and that the results of any assessment conducted may be considered by the circuit when determining whether to place a person under electronic surveillance as a condition of pretrial release when a person is charged with a violation of a protective order. *Id.* § 110-5(b), (d). The Code further provides that the defendant retains the right to challenge the validity of a risk assessment tool; however, the Code does not make the participation in any such a risk assessment mandatory. See *id.*; see also

8

*id*. §§ 110-6.4 (use of statewide risk assessment tool), 110-6.1(f)(7) (risk assessment tools may not be used as the sole basis to deny pretrial release).

¶ 17 The fifth amendment to the United States Constitution, which is applicable to the states by action of the fourteenth amendment, provides in relevant part that no person shall be compelled in any criminal case to be a witness against himself/herself. U.S. Const., amend. XIV; *Allen v. Illinois*, 478 U.S. 364, 368 (1986). The right against self-incrimination has been held to apply to trial and sentencing. See *Mitchell v. United States*, 526 U.S. 314, 327-29 (1999) ("[t]he normal rule in a criminal case is that no negative inference from the defendant's failure to testify is permitted," and same right against self-incrimination applies in the sentencing phase of a criminal case).

¶ 18 Along with trial and sentencing, the right to remain silent has been further found to apply during a presentence investigation (PSI). *People v. Maggio*, 2017 IL App (4th) 150287, ¶ 49. We find a PSI prior to sentencing to be similar in nature to a risk assessment prior to a hearing on pretrial release. The purpose of a PSI is to collect and provide information for the circuit court before a sentence is imposed. *People v. Williams*, 149 Ill. 2d 467, 488 (1992). A circuit court may rely on the information in an unobjected-to PSI to the extent it believes it is relevant and reliable (*People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 52); however, as previously stated, a defendant's refusal to participate in the PSI cannot be used as an aggravating factor at sentencing. *Maggio*, 2017 IL App (4th) 150287, ¶ 49.

¶ 19 We also find our supreme court's holding in *People v. Ashford*, 121 Ill. 2d 55, 80 (1988), instructive to this issue. In *Ashford*, the court stated as follows:

"Whatever information the defendant provided the probation officer could have been used against him at the sentencing proceeding, and he therefore had a right to remain silent." *Id.*

¶ 20    Here, the purpose of the risk assessment was to collect and provide information to the circuit court to aid in making a determination regarding the necessary conditions of pretrial release. The risk assessment could have indicated a high risk that the defendant was likely to commit another violation and, as such, the information could have been used against him at the pretrial release hearing. Although the circuit court could have relied upon the information in an unobjected and unchallenged risk assessment, to the extent it believed it was relevant and reliable, we find that the defendant had a right against self-incrimination regarding the risk assessment.

¶ 21    We note, however, that a circuit court is not prohibited from making a general comment regarding a defendant's refusal to participate in a risk assessment. In *People v. Moore*, 2023 IL App (4th) 210037-U, ¶ 55, the court distinguished the facts of that matter from the facts in *Maggio*, 2017 IL App (4th) 150287, as follows:

> "[B]y contrast, rather than considering defendant's nonparticipation as aggravating, the court merely noted his nonparticipation as the basis for the lack of information preventing it from potentially applying factors in mitigation."

¶ 22    We also find the above distinguishment to be relevant in this matter. Here, the circuit court did not simply comment that the defendant's lack of participation in the risk assessment limited the information before the circuit court; but instead, the circuit court specifically found the defendant's lack of participation in a nonmandatory risk assessment to be a basis for imposing electronic monitoring. As such, we find that the circuit court erred in determining that the defendant's failure to participate in a nonmandatory risk assessment could be a factor in its

10

determination regarding electronic monitoring. Therefore, pursuant to Illinois Supreme Court Rule 615(b)(1) (eff. Jan. 1, 1967), we direct the circuit court to modify its order to delete that portion of its finding that "The Defendant failed to cooperate with the pretrial investigation and was not scored under ODARA for his risk to recidivate."

¶ 23    Next, the defendant argues that the circuit court erred in taking judicial notice of matters not of record, namely, the allegations in the petition in the OP proceedings (No. 23-OP-208 (Cir. Ct. Christian County)). The defendant acknowledges that he did not object at the hearing to the circuit court's taking judicial notice of the petition, and that this issue was not presented in his notice of appeal, thereby forfeiting the issue on appeal, but argues that this court should review the error under the plain error doctrine.

¶ 24    The plain error doctrine is a narrow and limited exception to the general rule of procedural default which allows plain errors or defects affecting substantial rights to be noticed although the error or defect was not brought to the attention of the circuit court. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). An otherwise unpreserved error may be noticed under the plain error doctrine, codified in Illinois Supreme Court Rule 615 (eff. Jan. 1, 1967), if the defendant first demonstrates that a clear or obvious error occurred and then shows that either (1) the evidence at the hearing was so closely balanced that the error alone threatened to tip the scales of justice against the defendant or (2) the error was so fundamental and of such magnitude that it affected the fairness of the trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Wilmington*, 2013 IL 112938, ¶ 31. The initial step in conducting a plain error analysis is to determine whether an error occurred. *People v. Walker*, 232 Ill. 3d 113, 124 (2009). Without reversible error, there can be no plain error. *People v. Naylor*, 229 Ill. 2d 584, 602 (2008).

11

¶ 25 The defendant cites to our supreme court's recent discussion of judicial notice in *People v. Washington*, 2023 IL 127952. The *Washington* court noted that a circuit court may take judicial notice of the factual assertions presented in the transcripts from the underlying proceedings; however, the circuit court could not make credibility findings based on the matters of which it took judicial notice. *Id.* ¶ 53. The *Washington* court, however, was discussing Illinois Rule of Evidence 201(a), (b) (eff. Jan. 1, 2011). Although Rule 201 is applicable in both criminal and civil proceedings (Ill. R. Evid. 201(g) (eff. Jan. 1, 2011)), Illinois Rule of Evidence 1101(b)(3) (eff. Sep. 17, 2019) specifically states that the applicability of the rules of evidence do not apply in "proceedings with respect to release on bail or otherwise." As such, Rule 201 is not applicable with regard to judicial notice taken during a hearing on pretrial release, and therefore, we find *Washington* distinguishable from the case at bar.

¶ 26 The Code provides that when a person is charged with a violation of a protective order, the circuit court may consider "whether the person has been, or is, potentially a threat to any other person" and "any other factors deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior." 725 ILCS 5/110-5(E), (L) (West 2022). Our supreme court has stated that "[t]aking judicial notice of matters of record in other cases in the same court is simply an application of the increasingly recognized principle that matters susceptible of judicial notice include facts 'capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy.' " *People v. Davis*, 65 Ill. 2d 157, 161 (1976) (quoting McCormick on Evidence § 330, at 766 (2d ed. 1972)).

¶ 27 In this matter, the circuit court took judicial notice of a matter of record in a case within the same court that was the underlying basis for the matter at bar. The circuit court stated that the petition contained allegations that the defendant threatened physical harm to his former girlfriend,

12

to himself, and to anyone that his former girlfriend might date, and that there were allegations that the defendant had made repeated contact with his former girlfriend by telephone and had gone to her home uninvited. The circuit court also stated that a different judge had entered the emergency OP based upon those allegations. As such, the underlying allegations of the OP were factors that had a bearing on whether the defendant had been, or potentially was, a threat to any other person and whether the defendant had a propensity or reputation for violent, abusive, or assaultive behavior.

¶ 28    We further find that taking judicial notice of the underlying allegations set forth in the obtainment of the OP was proper for the circuit court's taking of judicial notice and consideration because without being fully informed of the basis for the OP, the circuit court would have been in a limited position to understand the severity of the alleged interactions between the defendant and the protected person, including the violation of the OP, and to determine the appropriate pretrial conditions necessary to avoid any future violations of the OP since the State failed to offer any proffer regarding the underlying allegations of the OP. Therefore, we find that taking judicial notice of the allegations within the OP proceedings was proper as it was a matter of record in the same court capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy. As such, we find no clear or obvious error and, thus, end our analysis under the plain error doctrine.

¶ 29    Finally, the defendant argues that the circuit court's determination that electronic monitoring was a necessary condition of pretrial release was an abuse of discretion. The defendant argues that the State did not proffer any facts related to the factors that the circuit court was permitted to consider when a person is charged with a violation of a protective order. The defendant states that the State only proffered that the text message conveyed anger and highly

13

offensive language, but not that the messages contained threats—violence or otherwise. As such, the defendant argues that there was nothing to demonstrate to the circuit court that he was dangerous and that the least restrictive condition of release was electronic monitoring.

¶ 30　Although we have determined that the circuit court's consideration of the defendant's refusal to participate in a risk assessment to be an improper basis for imposing electronic monitoring, we have held that the circuit court's taking judicial notice of the underlying allegations in the OP proceedings to be proper. As such, the circuit court considered that the defendant had threatened physical harm to his former girlfriend, to himself, and to anyone that his former girlfriend might date. The circuit court also relied upon the State's proffer that the defendant had violated the OP by sending angry and abusive text messages to the protected person.

¶ 31　We have thoroughly reviewed the record on appeal and the record reveals that the circuit court made the proper findings of fact and law required by the Code. Based on our review of the record, we find that the evidence presented was sufficient to support the circuit court's determination, by clear and convincing evidence, that there are no conditions or combination of conditions that could mitigate the real and present danger or threat the defendant poses on any person or persons or the community and that the circuit court's determination that electronic monitoring was the least restrictive condition of release was not an abuse of discretion.

¶ 32　　　　　　　　　　　　　III. CONCLUSION

¶ 33　For the foregoing reasons, we find that the October 6, 2023, order of the circuit court of Christian County, setting conditions for the defendant's pretrial release including electronic monitoring, was not an abuse of discretion and affirm, but remand for modification to the order as set forth above.

¶ 34　Affirmed and remanded with directions.

14