2024 IL App (1st) 240306-U

SECOND DIVISION
April 26, 2024

No. 1-24-0306B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC 1114892 |
| | ) | |
| SAMUEL DUNN, | ) | Honorable |
| | ) | Ankur Srivastava, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Affirming the trial court's order granting pretrial release with the condition of electronic monitoring.

¶ 2    Defendant, Samuel Dunn, appeals the trial court's order allowing his pretrial release with the condition of electronic monitoring.

¶ 3    The record shows that defendant was arrested on December 4, 2023, and charged with Aggravated Unlawful Use of a Weapon. Two days later, on December 6, 2023, defendant first appeared before the trial court. At that hearing, the State proffered that on

"December 4, 2023, at 10:15 a.m., in the 2400 block of East 78th Street, officers with the Great Lakes Fugitive Task Force, and Chicago Police Department officers had information to arrest the defendant. They identified the defendant at the aforementioned location. They placed the defendant into custody.

The defendant was searched and officers recovered a handgun inside the black bag that the defendant was carrying. That handgun was a loaded .40 caliber handgun, with one round in the chamber, and rounds in its attached magazine.

The defendant has a suspended Firearms Owner's Identification card and no conceal carry license."

¶ 4    The court then observed that there were some allegations in the police report that defendant had shot someone in the shoulder. The State responded that the police report indicated that defendant was the subject of a police investigation showing that defendant was positively identified by the victim as the individual who pointed a firearm in her direction, shot multiple times, and struck her once in the left shoulder. The victim was treated at a hospital for her injuries. The State asserted that defendant had no prior convictions and no history of juvenile adjudications, however, he had been arrested twice in the last year. The first arrest "was the basis of the revocation of his Firearms Owner's Identification card. It was for a domestic battery Class A; that was stricken with leave to reinstate."

¶ 5    The court asked the State if charges related to the shooting were still under investigation or if they had been rejected. The State responded that it appeared that they had been rejected, but counsel had no further information about why they were rejected.

¶ 6    In mitigation, defense counsel stated that defendant was 23 years old, and a lifelong resident of Chicago. Defendant had been working as a full-time unarmed security guard for two

years. Counsel further noted that Pretrial Services had prepared a Public Safety Assessment regarding defendant, which reported that he scored a 2 out of 6 on the "new criminal activity" scale, and a 1 out of 6 on the "failure to appear" scale. Counsel requested that the court "not give any weight to the allegations of a shooting, since charges were *** rejected." Accordingly, defense counsel asked "for the least restrictive conditions."

¶ 7   In ruling, the court explained its belief that "under the Pretrial Fairness Act, I can consider anything related that's relevant to crafting conditions of release that would reasonably ensure the safety of any person in the community or the community at large." The court

"recogniz[ed] that charges were rejected and only before me is the charge of aggravated unlawful use of a weapon; however, in looking at the totality and the circumstances, Mr. Dunn what I have here is an allegation from someone. I don't know what to make of it. You're not charged with it, okay, but someone has identified you as the person who fired at her multiple times."

¶ 8   The court further noted that the victim's identification of defendant was corroborated, in that she was treated for a gunshot wound, and that defendant was apprehended in possession of a firearm in connection with that investigation.

¶ 9   The court reiterated that defendant was "not charged with that shooting," but when putting "all of those facts together," the court expressed concern "about the risk that [defendant's] release poses to the community." The court explicitly "consider[ed] [defendant's] lack of criminal history," but found it "concerning" that defendant's Firearm Owner's Identification Card had been suspended.

¶ 10   The court additionally noted that the firearm defendant was found in possession of was "loaded with [ ] live *** rounds in the magazine," but that it did not hear "any other aggravating

3

factors" about the firearm, such as it being stolen or having a defaced serial number. The court then expressed that it was

> "going to impose what I think are the least restrictive conditions that I can impose at this time. *** [F]or all of those reasons I've already talked about at length, you're going to be released, sir, subject to *** electronic monitoring. You will be on an ankle bracelet. You will be restricted to your home, unless the sheriffs give you movement, and that's going to be up to them how they do that."

¶ 11    Defense counsel then interjected that defendant requested that he be allowed "movement for work." The court responded that the sheriffs

> "have the authority to allow movement for work. I am not going to order them to allow movement; that's going to be up to them upon their verification; and that's their decision, so I am not going to require them to do so. My understanding is that they regularly do allow people movement for work, as well as movement on two other days to conduct--but that's going to be once again up to them."

¶ 12    The court further explained that it understood that it "ha[d] the discretion to do that" but that it was "choosing not to, because I think that's best handled through the sheriffs."

¶ 13    The court entered a written order for conditions of pretrial release that same day. The court ordered "Sheriff's Office Electronic Monitoring," and provided the following basis: "Defendant identified by witness as person who shot at her multiple times–striking her once. Defendant arrested with a loaded firearm. Defendant's Firearm [Owner's Identification Card] suspended this year for a domestic battery arrest."

¶ 14    Defendant filed a timely notice of appeal on December 20, 2023, requesting the "remov[al] [of] the condition of Electronic Monitoring." Utilizing the form approved for Rule 604(h) appeals

by defendants, defendant first asserted that the "State failed to meet its burden of proving by clear and convincing evidence that conditions of pretrial release are necessary" because it had not shown that electronic monitoring was necessary "to ensure the defendant's appearance at later hearings or to protect an identifiable person."

¶ 15    Defendant next alleged that the court "failed to take into account the factors set forth in 725 IL S 5/110-5(a)," specifically, that he has "no criminal convictions in his background," that he "has a full time job," and that he "is a life long resident of Cook County." Defendant asserted that he "poses no threat to any person or persons in the community" and that the court "based the decision on unrelated allegations in the police report which are uncharged and not the specific, articulable facts of the current case."

¶ 16    Defendant next contended that the conditions of release ordered by the court were "not necessary to ensure defendant's appearance in court, ensure that the defendant does not commit any criminal offense, ensure that defendant complies with all conditions of pretrial release, prevent defendant's unlawful interference with the orderly administration of justice, or ensure compliance with the rules and procedures of problem-solving courts." Defendant asserted that electronic monitoring was not necessary because "there was no reason to believe [defendant] could not comply with court orders under conditions less restrictive than electronic monitoring" based on his "limited criminal history and lack of any failures to appear."

¶ 17    Finally, defendant asserted that the court improperly "relied on an allegation in the police report about a shooting" when there were "limited facts available about these allegations" and the State's Attorney's office had rejected charges for those allegations.

¶ 18    The appeal is brought pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act

5

(Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023). This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023). The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022).

¶ 19    Under the Act, the trial court can, based on the circumstances, grant pretrial release, deny pretrial release, or grant pretrial release with conditions. See 725 ILCS 5/110-2; 5/110-5; 5/110-6.1 (West 2022).

¶ 20    The Act begins with the presumption that a defendant is eligible for pretrial release "on personal recognizance" with standard conditions, including that the defendant attends all required court proceedings and does not commit any criminal offenses. 725 ILCS 5/110-2 (West 2022).

¶ 21    Pretrial release may be denied "[u]pon verified petition by the State" and after a hearing, when the court finds that the State has proven by clear and convincing evidence (1) that the proof is evident or the presumption great that the defendant has committed a qualifying offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), (2) that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and (3) that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2022)).

¶ 22    The court can also order defendant's pretrial release, with conditions, such as electronic monitoring, GPS monitoring or home confinement. See 725 ILCS 5/110-5 (West 2022). "At all pretrial hearings, the prosecution shall have the burden to prove by clear and convincing evidence that any condition of release is necessary." *Id.* In "determining which conditions of pretrial release, if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release," the court shall take into account several factors, including:

"(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence against the defendant, except that the court may consider the admissibility of any evidence sought to be excluded;

(3) the history and characteristics of the defendant, including:

(A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state;

(4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release, if applicable, as required

7

under paragraph (7.5) of Section 4 of the Rights of Crime Victims and Witnesses Act;

(5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release, if applicable;"

¶ 23    Before turning to defendant's claims in this appeal, we note that the procedural posture of this case is slightly different than other cases this court has previously considered under the Act. In this case, the State did not file a verified petition requesting the denial of pretrial release. Instead, at the parties' first appearance, the trial court *sua sponte* considered the conditions of defendant's release, and heard arguments and proffers from the parties. Because the State did not request, and the court did not order, that defendant be detained pretrial, the court was not required to make the findings required by section 5/110-6.1, titled "Denial of pretrial release," and set forth above. Nonetheless, the trial court was still required to consider whether any conditions of release were necessary pursuant to section 5/110-5, titled "Determining the amount of bail and conditions of release." See *People v. Willard*, 2023 IL App (5th) 230895-U, ¶¶ 7, 33 (affirming trial court's order granting pretrial release with the condition of electronic monitoring after a pretrial hearing when the State had not filed a petition to detain).

¶ 24    Accordingly, the only issues raised by defendant, and the only issues before this court, relate to the trial court's decision to impose a condition of release, namely, electronic monitoring. Many appellate courts have concluded that the ultimate decision regarding detention, continued detention, or the imposition of conditions of release are subject to abuse of discretion review, while others have concluded that appeals under the Act should be reviewed *de novo*. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 21. Although we recognize the considerable disagreement among the

five districts of the appellate court as to which standard of review applies to orders granting or denying pretrial release, we need not determine which standard applies in this case, as the result would be the same under any standard.

¶ 25    In this court, defendant has filed a memorandum in support of his appeal. He first argues that the State failed to meet its burden of proving by clear and convincing evidence that release with any conditions was necessary. Defendant alleges that the State did not argue that any conditions of release were necessary, and that the State "did not initially proffer the information surrounding the uncharged allegations of a shooting until the [c]ourt prompted it," which, he claims "indicates that the State was not concerned about risk to any identifiable person." We disagree.

¶ 26    We find no significance to the State providing information about the shooting of the victim in response to inquiry by the trial court rather than spontaneously. And the fact that the State did not request a specific condition of release does not mean that there is not clear and convincing evidence to support the trial court's determination to impose one. Which conditions, if any, to impose is ultimately a decision for the trial court to make, based on the record and proffers before it. See 725 ILCS 5/110-5 (West 2022).

¶ 27    Defendant next contends that the court imposed electronic monitoring "in contravention to the plain language of Section 5/110-5(g) of the Act" by "focus[ing] on a generalized risk to the community." He points to the language of section 5/110-5(g), which indicates that "Electronic monitoring *** can only be imposed as a condition of pretrial release if a no less restrictive condition of release or combination of less restrictive condition of release would reasonably ensure the appearance of the defendant for later hearings or protect an identifiable person or persons from imminent threat of serious physical harm." 725 ILCS 5/110-5(g) (West 2022). Relying on *People*

*v. Odom*, 2023 IL App (1st) 231751B-U, ¶¶ 31-32, defendant asserts that this language suggests that electronic monitoring can only be imposed to "(1) ensure the defendant's appearance for later hearings or (2) protect an *identifiable* person from imminent threat of serious physical harm" (emphasis in original), and that "the circuit court is restricted from imposing [electronic monitoring] as a condition of pretrial release unless one of the two above conditions is met." Accordingly, defendant contends that a "generalized risk to the community cannot be the basis for electronic monitoring; rather, there must be an *identifiable* person or persons at risk of *imminent* threat of serious physical harm." (Emphasis in original).

¶ 28      We find, however, that we need not determine in this appeal whether risk to the community can provide the basis of an order for electronic monitoring. Even if we read the statute as narrowly as defendant suggests, there is an identifiable person in this case who the court expressed interest in protecting—the victim, named in the police report, who identified defendant as the person who shot at her multiple times, striking her once in the shoulder. In the court's written order, it explicitly referenced the victim's identification of defendant as a basis for imposing electronic monitoring.

¶ 29      We also reject defendant's next contention, that even if the victim can be considered an identifiable person under section 5/110-5(g), the limited facts about that shooting do not support a finding that the victim was under an "imminent threat of serious physical harm." Where the proffered facts indicate that defendant shot at the victim multiple times, hitting her once in the shoulder, and requiring hospitalization, we find specious any argument that more details were necessary to establish that she is under the imminent threat of physical harm.

¶ 30      Finally, defendant contends that the court failed to take into account the factors set out in section 5/110-5(a) (West 2022). First, he asserts that the court failed to take into account the nature and circumstances of the offense charged, which he claims weighs in favor of no conditions of

release, because defendant "was charged with a non-violent, possessory offense at the time of the hearing." Defendant also contends that the court "failed to take into account [defendant]'s history and characteristics," including his low pre-trial scores, lack of criminal history, his work schedule, and family and community ties. Finally, defendant contends that the court "failed to take into account *** 'the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release,' " (725 ILCS 5/110-5(a)(4) (West 2022)) because the court's decision was based "on the uncharged allegations."

¶ 31    While defendant attempts to minimize the offense he is charged with committing, calling it a "non-violent, possessory offense," the State's proffer shows that defendant has had two recent arrests, the first for domestic battery, for which his Firearm Owner's Identification card was suspended. Although the defense stated at the hearing that defendant worked as an unarmed security guard, there can be no suggestion that his possession of a firearm was permitted by that employment. Despite having no authorization to legally possess a firearm, defendant was arrested again, in public, carrying a loaded firearm. See *People v. Ross*, 229 Ill. 2d 255, 275 (2008) (explaining that "loaded guns" are part of a category of weapons that are "dangerous *per se*").

¶ 32    Moreover, we reject defendant's contention that it was improper for the trial court to consider uncharged allegations. The statute gives the trial court broad discretion to consider various factors to determine "which conditions of pretrial release, if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2022). Although defendant was not ultimately charged with the shooting, the trial court could take the information into account when considering the statutory factors. In

particular, the circumstances of that shooting are relevant to "the nature and circumstances of the offense charged," (*id.*) as it was the basis for the investigation which led to defendant's arrest while in possession of a firearm. They are also relevant to defendant's "history and characteristics," (*id.*) specifically, defendant's criminal history, which naturally could include consideration of a history of arrests. Additionally, the court could consider the shooting as relevant to the "nature and seriousness of the real and present threat to the safety of any person or persons or the community," (*id.*) because the facts of that shooting show an obviously significant threat to the victim and community generally.

¶ 33    We find this case analogous to *People v. Willard*, 2023 IL App (5th) 230895-U, ¶¶ 28, 30. In that case, the defendant was charged with committing the offense of unlawful violation of an order of protection. *Id.*, at ¶ 4. At the initial hearing, the trial court granted defendant pretrial release with electronic monitoring, in part based on allegations contained in the order of protection regarding threats the defendant previously made to the victim. *Id.*, at ¶ 6. On appeal, the defendant argued that the trial court improperly took judicial notice of and considered those allegations because they were outside the record. *Id.*, at ¶ 23. The appellate court found, however, that the court properly considered those allegations, explaining that "without being fully informed of the basis for the [order of protection], the circuit court would have been in a limited position to understand the severity of the alleged interactions between the defendant and the protected person *** to determine the appropriate pretrial conditions." *Id.*, at ¶ 28. Similarly here, the allegations which led to the police interaction with defendant inform the nature and circumstances of the offense charged and the seriousness of the threat to the victim, and the trial court properly considered them determining the appropriate conditions of defendant's release.

¶ 34    Additionally, the record positively rebuts defendant's claim that the trial court did not consider the nature and circumstances of the charged offense, his history and characteristics, and the nature and seriousness of the real and present threat to the safety of any person or persons or the community. In ruling, the court explicitly "recognized that [the shooting] charges were rejected" and defendant was only charged with aggravated unlawful use of a weapon. The court stated that it was also considering defendant's "lack of criminal history" and that he had not been convicted of the domestic battery charge, but expressed concern that defendant's Firearm Owner's Identification card was suspended in connection with his arrest for domestic battery. The court noted that the gun recovered from defendant "was loaded with a live round, with rounds in the magazine," but there were no other aggravating factors regarding the firearm itself, including that it may have been stolen or had a defaced serial number.

¶ 35    In sum, the trial court's analysis of the above factors led it to conclude that defendant should not be detained pretrial. Instead, the court allowed his release, but with a condition of electronic monitoring. Based on the record before us, we find no error in the trial court's conclusion that release, with the condition of electronic monitoring, was appropriate.

¶ 36    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 37    Affirmed.